## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made between MCI Service Parts, Inc. ("Claimant") and the United States ("Government") this 16th day of June, 2003:

WHEREAS, the Claimant filed a claim to the defendant $13,570.93 in U.S. Currency in Case No.WMN-02-3807 now pending in the United States District Court for the District of Maryland; and

WHEREAS, the Claimant neither admits nor disputes the Government's assertion that reasonable cause existed for the seizure of the defendant property; and

WHEREAS, the parties wish to reach a fair and expedited resolution of this matter, the parties state:

1. On May 29, 2002, a seizure warrant was issued by U.S. Magistrate Judge Susan K. Gauvey authorizing the United States to seize $13,570.93 from LaSalle National Bank account number 5800277518. As a result of the seizure warrant, $13,570.93 was frozen in the account. The above referenced forfeiture action was instituted by the United States after demand therefor was filed by Claimant as permitted by law. Claimant is the owner of this bank account. This forfeiture action arose out of the Government's allegations that drug proceeds were deposited into Claimant's bank account at the direction of Colombian money brokers who work for Colombian narcotics traffickers. Drug proceeds involved in a money laundering offense are subject to forfeiture pursuant to 18 U.S.C. § 981 (a)(1)(A) and 984.

2. The Government alleges that the facts of this case are entirely consistent with a common scheme for laundering money through what is known as the Black Market Peso Exchange.

3. The United States contends that claimant knew or should have known that it was receiving funds through the Black Market Peso Exchange and the Claimant therefore would be unable to satisfy its burden of proof under the law. The factors that are alleged to have put Claimant on notice that it was receiving funds subject to forfeiture included, but were not limited to, the following: 1) the payments were made in U.S. dollars on behalf of a customer in a region of the world known as the source of illegal drugs and also known as a place where U.S. dollars derived from drug trafficking are routinely sold on the black market and used to pay for imports from overseas; 2) the funds came from a third party or third parties unknown to the Claimant, not from Claimant's customer; and 3) payment did not appear to come from accounts held by purchasers of Claimant's goods or services, or from accounts those purchasers had previously used to pay the Claimant;

4. The Claimant disputes the Governments allegations and contends that it is a <u>bona fide</u> purchaser or "innocent owner" of any alleged drug proceeds wired into its account. In particular, Claimant maintains that the funds it received were for products sold to Claimant's Colombian customers. Claimant further asserts that it did not know, had no reason to know, nor was willfully blind to the possibility that funds wired into its account for the benefit of its

customers were the alleged proceeds of drug trafficking. Claimant further contends that it will meet its burden of proof and that as the prevailing party it will be entitled to attorneys' fees and costs as provided by the Equal Access to Justice Act, 28 U.S.C. § 2412.

5. Claimant and the United States share the goal of insuring that legitimate sales and banking channels are not utilized by drug traffickers and drug organizations to launder their illegal proceeds from drug transactions and both wish to avoid incurring further fees and to avoid the risks inherent in proceeding with the current litigation..

NOW, THEREFORE, for the foregoing reasons and for good and substantial consideration, the adequacy and receipt of which is hereby acknowledged, the Claimant and the Government agree as follows:

1. The term "Claimant" as used herein includes Claimant's principals, subsidiaries, successors, representatives, agents, designees, assigns, partners, officers, and directors;

2. The parties hereto have entered into this agreement freely and without coercion. The parties to this agreement further acknowledge that they have read the provisions of the agreement, that they fully comprehend its provisions, and are prepared to abide by them. The parties further stipulate that this agreement embodies all of the agreements between the parties and that the parties have not relied upon any representation or statement not included herein;

3. This agreement resolves all issues raised by the United States as to the defendant property and the United States agrees not to seek forfeiture of these funds or any other funds of claimant's based upon the specific facts set forth in the May 29, 2002 seizure warrant issued by U.S. Magistrate Judge Gauvey (the "Warrant") or in any way connected with the investigation pursuant to which said Warrant was issued. The parties accept this agreement as final and binding as to all issues raised by the United States as to the defendant property;

4. Upon entry of this Agreement, the United States will direct LaSalle National Bank to release the hold placed on $13,570.93 in account number 5800277518.

5. After release of the hold, Claimant will withdraw its civil forfeiture claim.

6. The parties hereby waive all rights to appeal or to otherwise challenge or contest the validity of this agreement;

7. Claimant acknowledges that it has been made aware of the operation of money laundering system known as the Black Market Peso Exchange and the role that system plays in the laundering of drug proceeds that are in the form of U.S. dollars. Claimant also acknowledges that it has been made aware of the role that vendors of goods and services may play in the consummation of such money laundering offenses when they accept payment for goods and services in the form of U.S. dollars from third parties who are not associated with the person to whom the goods and services were sold;

8. In all future business dealing in which Claimant provides, or agrees to provide, goods, services, or goods and services, for export to, use in, or sale or resale in Colombia or elsewhere

in South America or in Central America, claimant shall verify that any payment for such goods and services is made by the person or entity that purchased Claimant's goods or services, or is made directly by a person or entity with a valid and verifiable debt to the individual or entity that purchase Claimant's goods or services.

9. Claimant covenants and agrees to and does hereby forever release, save and hold the United States and its officials, officers, employees, and agents harmless from any claim, liability, obligation, appeal, action or demand, known or unknown, existing or arising in the future, in connection with, arising out of, or incident to all property arrested and/or seized in this action, brought by any person or entity.

10. Claimant agrees this agreement does not entitle it to seek or to obtain attorney's fees as a prevailing party under the Equal Access to Justice Act, 28 U.S.C. § 2412, and Claimant, further waives any rights to attorney's fees, costs, and expenses that may arise under said provision of law or any other provision.

11. Claimant expressly waives any claim or right of action it may have against the United States, or any of its agencies, departments, employees or agents, for violation of its Constitutional, statutory, or personal rights, which may entitle it to collect pecuniary or punitive damages, attorney's fees, or costs, including, but not limited to, actions pursuant to Title 42, United States Code, Section 1983, the Federal Torts Claims Act, or any cause of action for the violation of any Constitutional or statutory rights arising out of, or incident to all property arrested and/or seized in the above referenced forfeiture action. As to any possible tax obligations owed to the United States, the terms of this agreement do not affect the tax obligations, tax fines, tax penalties, or any other tax obligations that Claimant may owe the United States government.

Thomas M. DiBiagio
United States Attorney

6-18-03
Date:

By: _____
Lisa M. Griffin
Assistant United States Attorney

MCI Service Parts, Inc.

6-20-03
Date

By: _____
Its: CFO